UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH RAHMAN,<br>   Plaintiff,<br>v.<br>CITY OF OAKLAND,<br>   Defendant. | Case No. 3:22-cv-05038-JD<br><br>**ORDER RE TRO AND PRELIMINARY INJUNCTION** |

Pro se plaintiff Joseph Rahman filed a civil rights action against defendant City of Oakland under 42 U.S.C. § 1983. Rahman lives in a van in an encampment of the homeless in the area of Derby Avenue in Oakland, California. The encampment is within 100 feet of the Latitude High School, which Oakland has designated as a "high-sensitivity area" due to heightened public-safety concerns. Dkt. No. 13 at 15. Rahman has sued over Oakland's plan to close the encampment, and has asked for a temporary restraining order and preliminary injunction against the closure. Dkt. Nos. 4, 6. The Court granted a brief TRO to allow service of Rahman's pleadings and motions on Oakland. Dkt. No. 8. Oakland filed a response, Dkt. No. 11, and the Court held a hearing via remote video access to allow Rahman to participate. Dkt. No. 17. The TRO is dissolved and the request for a preliminary injunction is denied.

**STANDARDS**

The standards for issuing a TRO and a preliminary injunction are the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Choudhuri v. Specialized Loan Servicing*, No. 19-cv-04198-JD, 2019 WL 3323088, at *1 (N.D. Cal. July 24, 2019). Injunctive relief is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th

Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'") (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in his favor, and that an injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter*, 555 U.S. at 20). A preliminary injunction may also issue where "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," if the plaintiff "shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. This alternative path to a preliminary injunction reflects our circuit's "sliding scale" approach, in which "the elements of the preliminary injunction are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131; *see also Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014); *Shuting Kang v. Harrison*, No. 18-cv-05399-JD, 2019 WL 4645723, at *1 (N.D. Cal. Aug. 13, 2019).

In all cases, "at an irreducible minimum," the party seeking an injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012) (internal quotation and citation omitted); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("The first factor under *Winter* is the most important -- likely success on the merits."). As a result, when "a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements]." *Garcia*, 786 F.3d at 740 (internal quotations and citations omitted).

**DISCUSSION**

**I.   MOOTNESS**

For a Section 1983 claim, and all federal claims generally, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Bernhardt v. City of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002). A matter is moot if at any time during the course of litigation, the plaintiff ceases to be threatened with or suffer "an actual injury [that is] traceable

2

to the defendant," and that is "likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation and citation omitted). The defendant typically "bears the burden to establish that a once-live case has become moot." *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022).

Oakland initially said that Rahman had moved out of the encampment, and so the complaint was moot. *See* Dkt. No. 11 at 8-9. At the hearing, Rahman told the Court that he had moved his van but returned to the encampment. At the Court's request during the hearing, Oakland's Homelessness Administrator, Daniel A. Cooper, visited the site and filed a declaration stating that Rahman's van is back "where it had previously been parked directly in front of the school entrance." Dkt. No. 20 ¶ 3 (Cooper Supp. Decl.); *see also* Dkt. No. 15 at 2 (Rahman Decl.) ("I am currently located on Derby Street close to 1045 by Latitude school."). Consequently, there is an impending concrete action -- closure of the encampment -- that threatens to cause Rahman harm. The Court declines to find that Rahman's claims are moot. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) ("A case becomes moot . . . only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.") (internal quotation and citation omitted).

## II. AN INJUNCTION IS NOT WARRANTED

Even so, Rahman is not entitled to an injunction against the closure. The complaint alleges that closing the encampment would destroy his personal property, including his "inoperable" van, and that Oakland does not offer adequate shelter alternatives. Dkt. No. 1 at 5-6, 8-10. It also appears to allege that Rahman will be subject to criminal penalties for his homelessness. *Id.* at 10; *see also* Dkt. No. 6 at 7-8. He alleges claims under the Fourth, Eighth, and Fourteenth Amendments. Dkt. No. 1 at 4.

The record does not support these concerns. Oakland states that, pursuant to city policy, property removed from an encampment will be stored for 90 days, and that notices are posted on-site with contact information regarding how to retrieve collected property. Dkt. No. 13 ¶¶ 10-13 (Cooper Decl.); *see also id.* at Exh. B (standard operating procedure for the collection and storage process). Oakland also states that it provides alternative shelter arrangements to individuals

subjected to a closure, *see id.* at ¶ 7, and that its policies "specifically prohibit[] the City from enforcing ordinances or policies that criminalize the 'status' of being homeless," *id.* at ¶ 3; *see also* Dkt. No. 11 at 7 (representing that "Rahman will not be cited or arrested merely because he lacks housing"). In addition, Oakland represents that "the City will ensure that a bed is available to Mr. Rahman at the St. Vincent de Paul congregate housing for 72 hours" from the time Cooper filed his supplemental declaration on September 13, 2022.[1] Dkt. No. 20 ¶ 11.

Rahman has not meaningfully contested these facts. He acknowledges that Oakland gave him several housing referrals, which he appears to have declined due to difficulty in finding a parking space for his van. *See* Dkt. No. 1 at 8-9; Dkt. No. 15 at 3. Rahman also indicated during the hearing that he can move his van when he wants to, albeit not easily.

Consequently, Rahman is not likely to prevail on his civil rights claims. That resolves the TRO and injunction requests against him, but for the sake of completeness, the Court notes that Rahman has also not demonstrated a likelihood of irreparable harm. The availability of shelter alternatives, as well as Oakland's specific commitment to house Rahman, distinguishes this case from others where an "imminent removal" would be "done without sufficient warning or plans for shelter" and "would expose [displaced individuals] to unjustifiable dangers they otherwise would not face." *Blain v. Cal. Dep't of Transp.*, --- F. Supp. 3d ----, No. 22-cv-04178-WHO, 2022 WL 2919646, at *3 (N.D. Cal. July 22, 2022). It may be, as Rahman suggests, that he will face considerable inconvenience if his van is towed, but that is not an irreparable injury. Towed vehicles can be recovered under well-established policies and practices, and any monetary consequences can be remedied in kind. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (internal quotation omitted); *Maffick LLC v. Facebook, Inc.*, No. 20-cv-05222-JD, 2020 WL 5257853, at *3

---

[1] In response to this pledge, Rahman objected that he has disabilities under the Americans with Disabilities Act that are in some way affected by co-living arrangements (*e.g.*, roommates, dormitories) and rules that bar his "comfort animal." Dkt. No. 22 at 2. The complaint does not make clear what ADA disabilities Rahman has, and in any event, these objections do not present a constitutional issue for Section 1983 purposes.

4

(N.D. Cal. Sept. 3, 2020) ("It is well established . . . that such monetary injury is not normally considered irreparable.") (quoting *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)).

These factors weigh against Rahman under a serious-questions/balance-of-hardships test, too. The record does not demonstrate that the balance of hardships tips so strongly in Rahman's favor that the weakness of his merits position is mitigated, or that an injunction would be in the public interest. The Court is sympathetic to the personal disruption and inconvenience that the closure might cause Rahman, but that hardship is significantly offset by Oakland's offers of shelter. And there is an important public interest in ensuring that access to the high school -- Rahman acknowledges that he is parked close to the school, Dkt. No. 15 at 2 (Rahman Decl.), in what Oakland says is the school's "drop-off/pick-up zone," Dkt. No. 20 ¶ 12 -- is not obstructed.

Rahman's suggestion that Oakland's closure policies are unduly vague does not lead to a different conclusion on the question of injunctive relief. *See* Dkt. No. 4 at 5; Dkt. No. 6 at 12. Although not entirely clear, Rahman appears to be referring to the city's "Encampment Management Policy." Dkt. No. 11 at 2; Dkt. No. 13 at 13-21. Even liberally construing a pro se litigant's pleading, *see Nguyen Gardner v. Chevron Cap. Corp.*, No. 15-cv-01514-JD, 2015 WL 12976114, at *1 (N.D. Cal. Aug. 27, 2015), nothing in the policy indicates that it might be unconstitutionally vague. It applies to all "encampments," which plainly means temporary and informal accommodations, on Oakland's public property, including individuals living in a vehicle. The policy is clear that public property within 100 feet of a high school is designated a "high-sensitivity area" that Oakland "prioritize[s] maintaining . . . free of encampments." Dkt. No. 13 at 15-16. Rahman says that "the City Council can approve a so-called encampment in a high-sensitivity area based on a methodology and criteria that are currently being withheld from the plaintiff and the rest of the unhoused residents in the City of Oakland," Dkt. No. 14 at 9-10, but that is of little moment. It may be that Oakland "reserves the right to allow" such encampments, and provides recommendations for how these encampments might be accommodated and managed. Dkt. No. 13 at 15. But this discretion does not support a vagueness challenge. *See Hernandez v. City of Phoenix*, 43 F.4th 966, 982-83 (9th Cir. 2022).

5

**CONCLUSION**

The TRO entered on September 6, 2022, Dkt. No. 8, is dissolved as of 12:00 p.m. on September 19, 2022, to allow Rahman additional time to make arrangements for his vehicle and other possessions. Oakland may then close the Derby Avenue encampment. Given Oakland's position that "it is reasonable for Mr. Rahman to move his van to a Low-Sensitivity Area," Dkt. No. 20 ¶ 12, the Court expects that Oakland will refrain from unreasonably interfering with Rahman's efforts to relocate. Rahman has requested that Oakland "identify low-sensitivity areas with available parking" that are nearby. Dkt. No. 22 at 3. The Court declines to order that Oakland do so, but encourages Oakland to share with Rahman the location of any such areas to the extent that it is aware of them.

If Oakland removes Rahman's vehicle from the encampment, it is directed to securely maintain the vehicle for at least 30 days to permit Rahman an opportunity to retake possession.

The request for a preliminary injunction, Dkt. No. 6, is denied.

**IT IS SO ORDERED.**

Dated: September 16, 2022

JAMES DONATO
United States District Judge